Good morning. May it please the Court, Chloe Dillon of Federal Defenders on behalf of Mr. Raya-Vaca. Under Matthews v. Eldridge, an alien apprehended in the United States has a right to counsel and a right to be advised of withdrawal of application relief from removal. Mr. Raya-Vaca should not have been kept in the dark about a preceding that incurred a tremendous consequence for him, especially when he plausibly could have avoided that consequence. In considering the right to counsel under the three factors outlined in Matthews v. Eldridge, the first factor is the private interest. And the consequences of an order of removal are serious. An order of removal bars an individual from readmission, in this case, a 20-year bar. And it also serves as an element of a crime, but not just any crime, an enhanced crime. Second is the risk of erroneous deprivation and the probable value of counsel. In terms of the risk of erroneous deprivation, the entire process is between a border inspection officer who's possibly overworked and an alien who does not know anything about the process, who also sees that officer as an enforcer and not a neutral party to the proceeding. These circumstances set the process up for error. But it's a process that's already been found to be riddled with error by a congressional commission. In terms of the probable value of counsel, counsel would be valuable in two respects. Counsel diffuses negative suspicions that are raised, but counsel also helps that individual present their case, identifies the important facts, and facilitates communicating those facts to the officer. The third factor, the government function involved and the administrative burdens. The government function involved in this case, one aspect of it is enforcement. The law of expedited removal also includes, however, a consideration of the form of relief of withdrawal of an application for admission. This is the case of expedited removal? It is, Your Honor. And in ordinary expedited removal at the border, he would not be entitled to these things you're asking for? Yes, Your Honor. I believe that those situations would be controlled by Barajas, Aguilar, and Sanchez-Aguilar. And this is the same type of removal, but the borders extended 100 miles for purposes of this, for purposes of deportation. And you can see that that's a lawful extension? Not without constitutional due process. And I don't think that the border is not extended 100 miles. I believe that the Supreme Court --- Purposes of these proceedings. They're saying if you're caught within 100 miles, we're going to give you the same expedited proceedings as if you were at the border. That's correct, Your Honor. That's what the statute actually reaches everywhere in the United States. The statute actually says that expedited removal can be effected anywhere in the United States so long as that person cannot affirmatively demonstrate two years of continuous presence in the United States by the regulation is limiting rather than extending. That's correct, Your Honor. It's actually a Federal registry notice that limited that. There's no regulation that's been promulgated that says that they won't do it. And, in fact -- How does it get into the Federal register? It's not a regulation? What is it? It's actually, it seems to be sort of a notification that was published in 2004 in the Federal register in which -- Can I publish something in the Federal register? I believe the Attorney General believes that it's within his or her power. The Attorney General made this an order by the Attorney General? Yes, Your Honor. Okay. That's it. Thank you. Let me just see if I understand your case and I have some questions because you are asserting that Mr. Ray Vaca, due process rights were violated in this 2011 expedited removal order. Yes, Your Honor. And you're stating a number of bases for that. Yes, Your Honor. One is failure to inform him of the charge and failure to read the sworn statement. Is that right? That's correct, Your Honor. Failure to inform of potential availability of relief. And then you're also asserting that he had a right to counsel at that stage. Yes, Your Honor. All right. Let me ask you, assume we conclude that Mr. Ray Vaca had a due process right to be And let's assume that we conclude those rights were violated. Is there any reason we should address the other due process violations you allege? I think that it's important to address those due process violations because Mr. Ray Vaca is entitled to that process. But is it necessary? It's not necessary. So I'd like to understand the contours a little bit of the alleged due process right to be informed of the potential for withdrawal of application for admission. What exactly would the officer have to say to comport with due process? How much information would that officer have to provide? I want to hear from you. Thank you, Your Honor. I think that this could actually even be accomplished in a very short period of time. I mean, officers are regularly advising people on an individual basis of certain rights that they have, such as their consular rights to notify a consulate and let them know that they've been taken into custody in the United States. So it would take just a few seconds to say you have the right to seek relief in the form of withdrawal of an application for admission. It would take a short time further in order to ask a few more questions about that person's candidacy for that form of relief. It might take a little longer to explain them you can withdraw your application, which you never thought of. It's in some ways a – it's an interesting legal concept, but it is a form of relief that has historically been accorded to people who are apprehended. If you want to explain it to them, you have to explain the concept is you withdraw an application. Of course, you didn't file an application, but this is a legal concept, and here's what it means. That would take a while for anybody to understand. Perhaps it can boil – be boiled down to simpler terms that, you know, Mr. Riavaca, I consider you to be applying for admission. Don't they have a script already developed for these situations? They do. In particular, if Your Honor is referring to that kind of paragraph that's at the top of the record of sworn statement, and just adding kind of another sentence to that. In fact, if you look at the last sentence that's in that paragraph that says, this is your opportunity to tell me anything else that you believe would be important bearing on these proceedings, that really only makes sense if, you know, at the beginning that person is advised, you know, you might want to give me information because I will be considering you for a form of relief from removal that would allow you to go back. So would you – let's assume that that was a violation, a right to counsel was a violation. Do we then, as the prior case suggested, if it's not structural error, are you contending that it's structural error, or do you have to then address prejudice? Your Honor, there is authority in PROA-TOVAR, the en banc decision. If I could just – looking at the en banc decision in PROA-TOVAR, this Court said, we recognize, as did the Court, that there may well be times when the administrative proceedings were so flawed that effective judicial review will be foreclosed. And so this Court has not precluded the possibility that there are situations in which the proceedings are so flawed or there's just such kind of structural error that effective judicial review of that proceeding is foreclosed, and that that alone may be sufficient for prejudice. And so that would be my argument for not proceeding to look at prejudice. In the event that the Court does go to prejudice, Mr. Ryabaka very plausibly could have avoided an order of removal here and been granted relief from removal. He is someone who was brought here as a child when he was 6 years old. He was raised in the United States, went to elementary and high school here. He then developed a long-term relationship with a United States citizen who had no connections to Mexico. He had two United States citizen children with her. His brother is a United States citizen. His mother was living in the United States. And his father passed away in the United States and was buried in the United States after decades of working in the Salinas agricultural community. And those factors are so weighty that they would plausibly overcome any other negative factors that could be present in his case. I'd like to reserve the remaining time for rebuttal, Your Honor. I'm sorry, Your Honor? Yes. I said thank you. Thank you, Your Honor. Okay. Good morning. May it please the Court, Mark Rahe for the United States. Your Honors, the district court in this case properly denied the motion to dismiss the information. And that ruling is consistent with the precedent of this Court, most primarily in the Barajas-Alvarado case. Even if this Court assumes due process violations that the defense alleges, which is exactly what the district court below did, this Court, the most direct way to affirm the judgment is to find that there's no prejudice. And I know Judge Fisher just asked my opponent, you know, are they making a claim of structural error? I don't believe they have. Barajas-Alvarado says we have to look at whether there's prejudice. What they've done in their brief, after arguing a year ago in San Diego that you have to balance the equities, that you have to find prejudice in that way, is that they're now raising a claim for the first time on appeal that somehow 20 years of precedent requiring prejudice was all wrongly decided. And as a three-judge panel, this Court doesn't have the authority to ignore that 20 years of authority. If we look again at Barajas-Alvarado, it makes very clear that you have to look to prejudice. And how do you do that? You apply the six factors of the inspector's field manual. And here, the district court found that five of them weighed in favor of a lack of plausibility of relief. And if you go in order, starting with the first one, seriousness of the immigration violation, as the district court found, this defendant had six illegal entries in just the two and a half years preceding his July 2011 expedited removal proceeding. There was no mention of that in my opponent's presentation a minute ago. That definitely makes this a serious violation. It may be one thing if it's an alien's first time to enter this country without authority, but when you do it six times in just a two and a half year period, you're obviously a flagrant recidivist in that regard. Secondly, the second factor is previous findings of inadmissibility. Here in September 2009, as the defense concedes even at page 48 of their opening brief, there was one prior finding of inadmissibility, and you'll find that at Excerpt of Record, page 205. The third factor, intent to violate the law. If you couldn't already infer it from that pretty aggravated history, the most direct evidence is the defendant's own admission that he entered the day before his arrest or the day before his expedited removal by coming through the mountains in a remote part of San Diego County. He didn't submit himself to inspection at a court of entry, so you can infer an intent to violate the law. And then fourth, the ability to easily overcome inadmissibility. This one also clearly militates against the plausibility of relief. As the district court found, this defendant had no pending petitions to adjust status. Although the defense has often referred to the fact that he was married, he's not legally married. In fact, in Excerpt of Record 216, that's from his own affidavit. He says, we want to get married. Well, under California law, common law, wives do have certain rights, or spouses, I should say. That may be your view. How much weight do we give the fact that he wasn't, quote, legally married? I don't think much weight at all, unless the defense, who has the burden of proof on prejudice, can say, then you know what? Somebody who stands in that position is afforded the same rights to adjust status immediately. And I'm not aware of any such authority. So it does make a difference for immigration purposes, because even as a common law wife or spouse, the immigration law requires an actual weight. That is my understanding, Your Honor. Correct. And the other thing to keep in mind, this fourth factor of the inspector's field manual, it doesn't just say the ability to overcome inadmissibility at some point down the line. It says easily. So this is something that has to happen quickly. I mean, it's one thing to say you want to get married for years. It's interesting. If this expedited removal happened in July of 2011, and even at the time this was litigated a year ago, that's two years later, they're still not married. And so I don't think that that That they're still not married unless they're married by operation of law. Well, perhaps. But, again, as I told Judge Fisher, I'm not aware of any federal immigration law that puts people in such situation in the same shoes as those who are legally married. So I don't It always bothers me when you're not aware of anything. Is there anything that says the opposite? Does it tell you in immigration law what the effect is of a common law marriage? I don't know of any authority off the top of my head, Your Honor. You suggested that there is a sliding scale of rights in the briefing. Correct. Based on an alien's longevity in this country and his legal status. You know, I don't read any of the authorities' site to stand for the proposition that an alien with no legal status who has been in this country for a month is entitled to fewer due process protections and removal proceedings than an alien with no legal status who has been here for two years. I think that's what you're trying to say. And maybe you can tell me exactly what authority you have for that specific proposition. Sure. Am I understanding your proposition correctly? I believe you are, Your Honor. I mean, now we're talking again about the due process, right? I mean, this is an issue of first impression. As far as you know, the expedited removals for seven years were only applied to arriving aliens, and we know the law is clear that they basically have the absolute minimum of rights. So then you have this expansion to the present case where somebody has to be found within 100 air miles and has to have been here at least 14 days. In the absence of authority, I did my research, and when I see that Johnson v. Eisentrager case that says there's a sliding scale, when I read Matthews v. Diaz, which says not all aliens are placed in the same footing for due process purposes, it's not one homogeneous legal entity. Then I say, all right, if it's a sliding scale, where does this defendant stand on that scale? And here, I mean, your hypothetical assumed one month present. He was only here one day, and he was less than 10 miles from the border. I mean, I would say that puts him on a closer footing with somebody who is knocking at the door. That's the colloquial that's used to describe arriving aliens than somebody else on the other side of the sliding scale. So if he'd been here a month, he would have been entitled to the formal, or he would have been put through the formal removal proceedings? Correct. So the line is 30 days? Fourteen days. Fourteen days expedited someone in his situation, but if he's here longer than 14 days, then? Right. And it's interesting, too, on that point. I know there was some discussion. The statute, 8.12.25, actually gives them authority, a greater authority to expand this expedited removal, with no geographical limitation and requiring at least two years' presence. What the Secretary of Homeland Security did in 2004 said, we're only going to exercise a small piece of that by requiring temporal and spatial proximity to recent border entries and only going 10 miles in. But coming back to your question about the due process, I know the Court asked for a supplemental briefing under Eldridge, the three Eldridge factors, and one of them I want to focus on in response to what my opponent said is that risk of erroneous deprivation. I'm sorry, risk? The risk of erroneous deprivation of the rights, and that's the second factor. And we know we have to apply this on a case-by-case circumstance. With this removal, there has never been one word argued by my opponent below or here that this defendant was not inadmissible for the reasons stated during that July 2011 proceeding. So there's no, there's not even a claim that he was erroneously found inadmissible. And then the question comes to, you know, and actually on that point, a lot of the claims of error that my opponent alleges in the expedited removal process aren't even remotely implicated by this case. She talks about studies where potential asylum seekers are being wrongly returned, not being properly screened. There's never been a single claim here that this defendant had any fear of persecution in Mexico. She also talks about United States citizens being erroneously removed through the expedited removal procedure. We know this defendant's not a U.S. citizen. He's never claimed as much. Not once have they raised any reason to say that the finding of inadmissibility was improper. And as far as the relief, that is an entirely, the withdrawal of application relief is an entirely discretionary decision. The regulation, it says that they have, it makes a point of saying that there is no right to this relief. And we know from the expedited removal procedures that there's not even an appeal from this. So in this situation, there is no risk of erroneous deprivation. I would submit to the Court by definition when there's an entirely discretionary decision, as is the issue here under the Inspector's Field Manual, it can never be wrong for those purposes. It's entirely up to the officer in the field. The discretion is to be guided, and that's not subject to appeal. So for that reason, we don't believe that on the facts of this case that this defendant can prove that he actually had a due process right to counsel. Now, coming back to prejudice, not only when one applies the six factors of the Inspector's Field Manual, does that militate against any finding of prejudice? There are other factors in the record. And namely, this defendant, his first couple of illegal entries, they gave him voluntary returns. That shows that the agency, when they were inclined to exercise that leniency or that clemency, they knew how to do it. But here they didn't. They subjected him to this procedure, and it's one that the Brajas Alvarado has said, even if it doesn't have judicial review, which excuses the first two prongs under 1326, it is still a viable removal for purposes of a 1326 prosecution. And not only that, when one looks to the legislative history of the expedited removal, this is precisely the kind of case where they said that the procedure is proper, it's meant to be expeditious because they estimate at least 1 million aliens enter the United States illegally between the points of entry. That Federal Register notice that's cited in the briefs from August 11, 2004, it says we don't have enough resources to put all these aliens through formal proceedings. And in fact, we want to deter subsequent entries because it tends to be more dangerous when people come through the mountains. Either in the cold of winter or the dead heat of summer, you know, in San Diego County. It specifically says we are looking, the big target will be Mexican nationals who are repeat violators, repeat, you know, recidivists, and that's exactly what I would submit. The record here shows this defendant as being. So it's consistent with the legislative history. The agency knows how not to use this, as they've demonstrated in the past, yet they chose it here. And at least five of those six factors under the field manual weigh against the defendant. With a couple minutes left, though, I'd also like to point out a couple other arguments my opponent made for prejudice, namely the use of statistics. Going back to United States v. Corrales-Beltran and more recently in Barajas-Alvarado, this Court said that you can't, it doesn't give much weight to statistics because you're supposed to apply the discretionary factors to the unique circumstances of each case. And even as I pointed out, you know, if you take those statistics at face value, I think the very first year, 2004, there was a substantial percentage of people who were subject to expedited removal who were allowed this relief. But the interesting thing is the statistics cited by my opponent, they go from fiscal year, I believe, September, you know, September 1 to October 30 or whatever. It's right around that period. This kind of expedited removal did not go into effect until August 11 of 2004. So all of those statistics from that first banner year in 2004 wouldn't even apply to this kind of case. And on top of that, as I point out in my brief, with each year that goes forward, the percentages became even lower. So if this Court even wants to give any weight to them, it still doesn't carry the defendant's burden of showing prejudice. And finally, I know my opponent cited to an anecdotal case where somebody who had had a prior order of removal and a 1001 conviction was given this relief and almost wants to say that simply because she found this one other case, that's the end of the story. It's not true, Your Honors. If you look at Barajas-Alvarado, there's a footnote in there where the Court was also cited to two other anecdotal cases of people who I believe even used fraud in their case. Without any explanation of the facts of those cases or the rationale used, we can't just automatically assume that this applies to this defendant. There has to be an explication of the factual circumstances. Barajas seemed to hinge on the fact that the defendant in that case committed obvious and deliberate fraud. In fact, that seems to be a noted factor. Here, there's no fraud. Is that correct? You are correct. I would say that's definitely, there's a sentence in the Inspectorate. It seems like that distinguishes that case in terms of the weight that we give to the various considerations on the prejudice analysis. Okay. And I respectfully disagree with that. And the reason why is if that were true, and I know my opponent characterizes the case as that, then there would have been no need for Barajas-Alvarado to even apply the six factors of the Inspector's Field Manual. But if you look at page 1090 of that opinion, it specifically says, when we consider the factors listed in the Field Manual, it is clear they all weigh against Barajas-Alvarado's request for withdrawal. And then later, right at where 1090 becomes 1091, and the point I'm getting at, I don't think it's an alternative holding at most. What the Court says is given the weight of these factors against any request for withdrawal and given the Field Manual's direction that the immigration officer should ordinarily issue an expedited removal order, rather than permitting withdrawal in situations where there is obvious deliberate fraud, it was implausible for Barajas-Alvarado. And so what I would say from that is, if the only thing that Barajas-Alvarado rested on was the finding of fraud, you wouldn't have a need for that first sentence and there would have been no need to address those factors. Yes, there was no fraud here, but still, when you apply the weight of the factors, five of six of them for sure, the district court found, militate against plausibility of relief. And I see my time is up. If there are no further questions, the government would submit. Thank you, counsel. I'd like to begin with addressing the constitutional issue and regarding the sliding scale. No court has ever found or refused constitutional protection to any person in the United States. There's no decision in which any court has refused constitutional protection to any person in the United States. And specifically, if this Court is looking at a 14-day period in which that is what sort of triggers or hinges whether constitutional protection applies, I believe that that's exactly what Justice Scalia in the Supreme Court said does not happen under Boumediene v. Bush. It says that it's not the attorney general or Congress's prerogative to switch on and off the Constitution. The Constitution applies according to its own body of law, and it would not be determined based on, as Judge Reinhart noted, an order of the attorney general saying, well, we're going to apply it to people who have 14 days. And so I don't believe that that determines whether the Constitution applies and whether this person is constitutionally protected. Regarding the prejudice issue in this case in marriage, I wanted to address Mr. Ryabaka's common-law marriage.  And that meaning of his relationship in Mexico may have some bearing on whether they decided to get legally married or not. But I'd also like to give an analogous circumstance in the — in an immigration judge removal context in Matter of Hashmi. There, what the Board of Immigration Appeals determined is that it's appropriate to continue an immigration judge proceeding for an individual to submit an I-130 petition to get married. And I think that it's reasonable to say that getting a legal marriage in either Mexico or the United States can be done rather quickly. That is not something that takes a lot of time. And in other immigration law contexts, proceedings are continued for that process to occur because it can occur so efficiently. And so I don't think that whether his marriage was lawfully entered or whether it's a common-law relationship should be the deciding factor for whether the connections that he has to this country and the investment that his family has in that relationship, given the two children, this is a clearly qualifying relationship. This is a bona fide relationship between those two individuals. Regarding the no right to relief in the form of withdrawal of application for admission, I cited in my reply brief the fact that that phrase is best understood within the context and the history of the form of relief of withdrawal of application for admission. And that history is that there was a time when it was an absolute right. There was a time when people could, as an absolute right, withdraw their application and avoid an order of exclusion. And later, the Board of Immigration Appeals modified that to be discretionary, within the discretion of the Attorney General. And so that phrase is best understood as you don't have the absolute right to withdraw your application. It is a discretionary form of relief. And regarding the statistics, whether they're going down, they hovered around mid-40s for the last years in which those statistics were published, and then the government elected to stop publishing those statistics. And there are no cases in which immigration officers have either granted or denied this form of relief available to us on West law. And so if Mr. Rayavaca cannot show prejudice with a consideration of statistics, and if he cannot present the only case that is available to him, then how can Mr. Rayavaca show prejudice? How can this avenue of collateral attack that was specifically created through Barajas Alvarado be affected if he is essentially precluded from all forms of demonstrating prejudice? And with respect to the standard to be employed and the language of Barajas Alvarado, Barajas Alvarado simply didn't reach what the standard was for considering withdrawal of application for admission. There is language that says we need not resolve this issue when they are debating sort of two possible standards that could apply. And so I think that a fair reading of Barajas Alvarado is that it didn't decide exactly which standard applies. The historical standard that officers have used in deciding whether to grant this form of relief from removal is a balancing of all facts and circumstances, and that is embodied in the inspector's field manual. The language of the inspector's field manual is withdrawal should be based on a careful balancing of relevant favorable and unfavorable factors in order to reach an equitable decision. Such factors might include. And so if a factor is not relevant, it's not considered. It doesn't simply default into a position of being a factor that weighs against the individual. And it makes more sense to have officers weighing favorable and unfavorable factors, which is a much less technical standard. Thank you, Your Honors. I believe my time is up, unless the Court has any questions. Thank you. The case just argued will be submitted. Final case of the morning is Green v. Colvin.
judges: REINHARDT, FISHER, MURGUIA